**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HASBBIN SUGHAYYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 4350** |
| | ) | |
| **CITY OF CHICAGO, a municipal** | ) | **Magistrate Judge Sheila Finnegan** |
| **corporation, OFC. RUDOLPH GARZA and** | ) | |
| **OFC. SEAN CAMPBELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hasbbin Sughayyer filed suit against Defendants the City of Chicago (the "City"), Officer Rudolph Garza, and Officer Sean Campbell, alleging that they violated 42 U.S.C. § 1983 by using excessive force against her during the course of a traffic stop, falsely arresting her, and denying her equal protection of the laws. Plaintiff further alleges that Officer Garza battered her, and that he and Officer Campbell both subjected her to intentional infliction of emotional distress and malicious prosecution in violation of Illinois state law. Plaintiff also seeks to recover against the City under theories of respondeat superior and indemnification.

The case is scheduled to go to trial on June 13, 2011, but Defendants first seek partial summary judgment on Plaintiff's false arrest and malicious prosecution claims, contending that both are barred by the doctrine of collateral estoppel.[1] For the reasons set forth here, the motion is denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

On July 20, 2008, Plaintiff was driving a rented black Nissan Sentra near W. 63rd Street and S. Mobile Avenue in Chicago. At some point between 9:26 p.m. and 9:45 p.m., Officers Garza and Campbell pulled Plaintiff over, issued her a traffic citation for failure to signal, and ultimately arrested her on charges of drug possession. (Doc. 61 ¶¶ 4, 6, 8; Doc. 65 ¶¶ 4, 6, 8). The parties dispute nearly every detail surrounding the stop and arrest. For purposes of this motion, however, the Court focuses on Officer Garza's testimony during three separate proceedings: (1) the preliminary hearing in relation to the drug possession charges; (2) the administrative hearing stemming from the impoundment of Plaintiff's rental car after her arrest; and (3) the deposition of Officer Garza in this civil lawsuit.

At issue is whether Plaintiff is collaterally estopped from pursuing her false arrest and malicious prosecution claims in this lawsuit because during the impoundment hearing, the Administrative Law Officer ("ALO") found that Plaintiff had drugs in her car, which gave Officers Garza and Campbell probable cause to arrest and prosecute her.[2] For reasons discussed in this Opinion, the Court finds that collateral estoppel does not apply here.

---

[2] To succeed on a claim of false arrest or malicious prosecution, Plaintiff must prove that she was arrested, or that proceedings were commenced or continued, "without probable cause." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010); *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009). "If probable cause is found to exist, it is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (internal quotations omitted).

## A.    The Preliminary Hearing (August 12, 2008)

On August 12, 2008 – a few weeks after Plaintiff's arrest on drug possession charges – a Cook County Circuit Court Judge conducted a preliminary hearing to determine whether probable cause existed for the arrest.  At that hearing, Officer Garza testified, among other things, that:

1.    Plaintiff was driving westbound on 65th Street and she failed to use a turn signal when she turned northbound onto Mobile Avenue, leading to the stop of the vehicle.  (Doc. 64 ¶ 9; Doc. 66, Ex. A).

2.    There was no passenger in Plaintiff's car.  (*Id.*).

3.    As he approached Plaintiff's vehicle, he saw her toss a vial that he suspected contained the drug PCP.[3]  (*Id.*).

No other witnesses testified at the hearing.  At the conclusion of the hearing, the judge dismissed the charge of PCP possession based on a finding of no probable cause.  He did not discuss why he made this finding.  (*Id.*).

## B.    The Impoundment Hearing (September 18, 2008)

Plaintiff's rental vehicle was impounded after the arrest because it "was found to contain controlled substances or cannabis . . . or . . . was used in the purchase, attempt to purchase, sale or attempt to sell controlled substances or cannabis, in violation of Section 7-24-225" of the Municipal Code of Chicago (the "Code").  (Doc. 62-1, Ex. G; Doc. 65 ¶ 12). Two months after her arrest, Plaintiff and her attorney attended a hearing to contest the impoundment.  During that September 18, 2008 hearing, Plaintiff denied that she had any

---

[3]    A laboratory analysis dated July 23, 2008 confirmed that the vial contained "Phencyclidine (PCP)."  (Doc. 62-1, Ex. E).

drugs in the car, and argued that Officer Garza had planted the drugs.  (Doc. 61 ¶¶ 15, 16; Doc. 65 ¶¶ 15, 16).

Plaintiff claims that she was not allowed to conduct any discovery prior to the hearing, noting that the ALO denied her request for documents relating to Officer Garza's disciplinary history and past interactions with Plaintiff, and copies of radio transmissions relating to the incident.  (Doc. 66, Ex. C, at 1-5).  It appears, however, that Plaintiff did receive all information the City intended to rely on at the hearing, as required by section 6.3 of the Code's Procedural Rules & Regulations of the Department of Administrative Hearings.  (*Id.*).

At the hearing, Plaintiff testified in her own defense, and called her father as a witness.  (Doc. 61 ¶¶ 18, 19; Doc. 65 ¶¶ 18, 19).  Officer Garza also testified as to his version of events, and Plaintiff's counsel had an opportunity to cross-examine him.  (*Id.* ¶ 17; Doc. 65 ¶ 7).  Plaintiff objects that the ALO improperly limited the scope of that cross-examination in that he declined to allow her attorney to question Officer Garza regarding the radio transmissions, the racially offensive comments he allegedly made to her during the stop, or the actions he allegedly took towards her such as showing her his tattoos and "getting up over [her] in the back seat of the squad car."  (Doc. 64 ¶¶ 13-15).  In any event, there is no dispute that Officer Garza testified:

1. Plaintiff was alone in her vehicle.  (Doc. 64 ¶ 19A).

2. Plaintiff tossed a vial into the air towards the passenger seat, and Officer Garza retrieved it from on top of that seat.  (*Id.* ¶¶ 19B, 19C).

3. Officer Garza had made six prior arrests for PCP.  (*Id.* ¶ 19G).

4. Plaintiff asked for a supervisor on the scene.  (*Id.* ¶ 19H).

5. The initial traffic stop was for failing to signal while turning from 65th Street onto Mobile Ave. (*Id.* ¶ 19D).

6. Officer Garza and Officer Campbell were in a lot on Mobile Ave. just south of 65th Street when they first saw Plaintiff's vehicle. (*Id.* ¶ 19E).

7. After seeing Plaintiff turn from Mobile Ave. onto 65th Street without signaling, Officer Garza and Officer Campbell pulled in immediately behind her. (*Id.* ¶ 19F).

At the conclusion of the hearing, the ALO observed that the "police frame and plant" was an "implausible defense," and found Plaintiff liable for having drugs in her car. (Doc. 66, Ex. C, at 75). She was ordered to pay a $1,000 fine plus an additional $170, and given 35 days to appeal. (Doc. 61 ¶ 20; Doc. 65 ¶ 20).

## C. Deposition Testimony (July 16, 2010)

After Plaintiff filed this lawsuit, Officer Garza testified at a deposition on July 16, 2010, which was approximately two years after the arrest. His testimony differed in certain respects from testimony he had given during the impoundment hearing. Officer Garza testified (in part):

1. When Plaintiff's vehicle was stopped, there was a passenger in it named Jannette Portalatin. (Doc. 64 ¶ 20A).

2. Plaintiff tossed a vial toward the passenger side of the vehicle which bounced off the window and landed in the passenger's lap. The passenger then tried to close her legs to hide the vial. (*Id.* ¶ 20B; Doc. 66, Ex. G, at 53, 62-63).

3. Officer Campbell retrieved the vial from the car (not Officer Garza). (*Id.* ¶ 20C).

4. Officer Garza had not made any prior arrests for PCP. (*Id.* ¶ 20G).

5. Officer Garza questioned the passenger and she admitted that the vial contained PCP. (Garza Dep., at 91-92).

6. Plaintiff did not ask for a supervisor on the scene. (Doc. 64 ¶ 20H).

7.  Officer Campbell handcuffed Plaintiff and her passenger together behind Plaintiff's car, though the passenger was later driven to an intersection near her home and released.  (*Id.* ¶ 20I; Garza Dep., at 99-100).

8.  The initial traffic stop was for failing to signal while exiting a parking lot east of Mobile Ave. and turning onto 65th Street.  (*Id.* ¶ 20D).

9.  Officer Garza and Officer Campbell had been sitting in the squad car for about 10 minutes on Narragansett on the southeast corner with 65th Street when they first saw Plaintiff's vehicle.  (*Id.* ¶ 20E).

10.  After seeing Plaintiff turn from the parking lot east of Mobile Ave. onto 65th Street without signaling, they drove eastbound on 65th Street past Plaintiff as she was heading westbound, made a u-turn and then followed her.  (*Id.* ¶ 20F).

Plaintiff also deposed Officer Campbell in connection with her lawsuit.  His testimony was inconsistent with Officer Garza's impoundment hearing testimony in certain respects, but largely consistent with Officer Garza's subsequent deposition testimony.  The main exception is that Officer Campbell testified that the vial landed on the floor after Plaintiff tossed it rather than on the passenger's lap.  (*Id.* ¶¶ 21A-21C, 21G; Doc. 66, Ex. F).

## D.   Defendants' Motion

Defendants now move for partial summary judgment on the false arrest and malicious prosecution claims, contending that Plaintiff is collaterally estopped from pursuing these claims in light of the ALO's finding during the impoundment hearing that Plaintiff had drugs in the rental car.

## DISCUSSION

## A.   Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

6

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(c). In viewing the facts presented on a motion for summary judgment, the court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear,* 528 F.3d at 512.

## B.    Collateral Estoppel

It is well-established that "when a state agency 'acting in a judicial capacity . . . resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott,* 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 422 (1966)). The Supreme Court has explained that "giving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel: enforcing repose." *Id.* at 798.

The parties agree that Illinois law governs the preclusive effect of the administrative impoundment hearing in this case. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 375 (1985). Under Illinois law, Defendants must prove four elements to establish collateral estoppel:

(1) the issue decided in the prior action was identical to the one presented in the suit in question; (2) a court of competent jurisdiction rendered a final judgment on the merits in the prior action; (3) the party against whom the doctrine is asserted was a party to the prior action or in privity with such a party; and (4) the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action.

*LaSalle Bank Nat'l Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635-36, 826 N.E.2d 449, 456 (2d Dist. 2005). As an equitable doctrine, collateral estoppel "will not be applied if an injustice would result." *Id.* at 636, 826 N.E.2d at 456. In addition, "the party against whom the estoppel is asserted [must have] had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding." *Id.*

Defendants argue that the impoundment hearing easily satisfies all of the necessary requirements for collateral estoppel. Plaintiff does not dispute that the ALO issued a final judgment that she had drugs in her car, or that the presence of drugs in the car establishes probable cause for her arrest. Nor does she dispute that lack of probable cause is an element of both her false arrest and malicious prosecution claims. Plaintiff argues, however, that the Illinois Supreme Court does not apply collateral estoppel to summary administrative proceedings like the impoundment hearing. She also objects that the impoundment hearing did not afford her a full and fair opportunity to litigate her position, and that the parties did not "actually and necessarily" resolve all relevant issues at that hearing. Finally, Plaintiff argues that significant discrepancies between Officer Garza's impoundment hearing testimony and his subsequent deposition testimony render application of collateral estoppel inequitable in this case. The Court addresses each argument in turn.

8

### 1.    Summary Proceedings

Plaintiff first argues that the impoundment hearing was intended to be swift and limited in scope like statutory summary proceedings, and thus cannot support the application of collateral estoppel.   In support of this position, Plaintiff relies on cases addressing statutory summary driver's license suspension hearings.   In *Hurlbert v. Charles*, 238 Ill. 2d 248, 938 N.E.2d 507 (2010), for example, the plaintiff was arrested for driving under the influence of alcohol, and he filed a petition to rescind the "statutory summary suspension of his driver's license."   *Id.* at 249-50, 938 N.E.2d at 509 (citing 625 ILCS 5/2-118.1).   At the hearing on the plaintiff's petition to rescind, the plaintiff and the arresting officer both testified regarding the circumstances of the arrest.   *Id.* at 251, 938 N.E.2d at 510.   The trial court denied the petition, finding that the officer had probable cause to arrest the plaintiff.   The plaintiff responded with a complaint charging the officer and the City of Urbana with malicious prosecution.   *Id.* at 251-52, 938 N.E.2d at 510.

The defendants moved for summary judgment, arguing that the statutory summary suspension hearing collaterally estopped the plaintiff from proving lack of probable cause to arrest.   *Id.* at 252, 938 N.E.2d at 511.   The Illinois Supreme Court disagreed, noting that the legislative purpose behind the statutory summary suspension statute is to "conduct[] swift hearings for the sole purpose of determining whether a court has sufficient reason to rescind the summary suspension of a motorist's driving privileges."   *Id.* at 259, 938 N.E.2d at 514 (citing *People v. Moore*, 138 Ill. 2d 162, 169, 561 N.E.2d 648, 651-52 (1990)).   The court held that giving preclusive effect to statutory summary suspension hearings would make it less likely that the State would "simply rely on police reports as evidence, but instead would elect to call witnesses and conduct full blown hearings."   *Id.* at 259-60, 938

N.E.2d at 515. The court found this to be contrary to the statutory goal of conducting "swift hearings" that are "of limited scope." *Id.* at 257, 938 N.E.2d at 513 (quoting *Moore*, 138 Ill. 2d at 169, 561 N.E.2d at 651).

Plaintiff claims that impoundment hearings should be treated the same as statutory summary suspension hearings because both deprive a plaintiff of a full and fair opportunity to litigate the case. Plaintiff notes, for example, that the Chicago Municipal Code provides only three possible defenses to a drug impoundment charge: (1) the vehicle used in the violation was stolen at the time and the theft was reported . . . ; (2) the vehicle was operating as a common carrier and the violation occurred without the knowledge of the person in control of the vehicle; or (3) . . . the vehicle had been sold to another person prior to the violation." (Doc. 68, Ex. K.) Citing *Moore*, Plaintiff insists that these statutory defenses "make clear the very limited scope of the impound hearing," which precludes application of collateral estoppel. (Doc. 63, at 12).

Defendants argue otherwise, relying on the court's rejection of this very argument in *Felder v. City of Chicago*, No. 07 C 6501, 2009 WL 742774 (N.D. Ill. Mar. 19, 2009) (Grady, J.). In that case, plaintiff Felder was arrested for soliciting a prostitute who turned out to be undercover police officer Bady. *Id.* at *1. Felder's car was impounded in connection with the arrest, and he requested an administrative impoundment hearing. At that hearing, which lasted approximately 20 minutes, Felder testified on his own behalf and cross-examined Officer Bady. The ALO found that Felder agreed to pay Officer Bady for oral sex in violation of a Municipal Ordinance. Felder did not appeal, but instead filed a federal lawsuit alleging, among other things, false arrest. *Id.* at *1-2.

The defendants sought summary judgment on the grounds that the ALO's finding established probable cause for Felder's arrest and Felder was collaterally estopped from challenging that determination. Citing *People v. Moore*, Felder urged the court to treat impoundment hearings like statutory summary suspension hearings and find that "facts decided at those hearings should not be given preclusive effect because of the impact on the hearing process." *Id.* at *7. The court declined, noting that "[t]he key factor in *Moore* – a legislative mandate to act 'swiftly' in the public interest – is missing here." *Id.* The court also distinguished the concern in traffic court that "motorists might attempt to introduce irrelevant details . . . if they believed it might influence the outcome of a subsequent civil suit." *Id.* For purposes of impoundment hearings, plaintiffs are already entitled to retain counsel and request pre-hearing discovery, and the court had "no reason to believe that [these procedures] will unduly burden the City, respondents or the hearing process itself." *Id.*

Plaintiff asserts that *Felder* was "wrongly decided," stressing that "the decision issued prior to the Illinois Supreme Court opinion in *Hurlbert*." (Doc. 63, at 11). To the extent the *Hurlbert* court merely affirmed the analysis set forth in *Moore*, however, this Court does not see how the more recent opinion would have altered the decision in *Felder*. As stated, the *Felder* court focused on the "legislative mandate to act 'swiftly' in the public interest," 2009 WL 742774, at *7, and the *Moore* court likewise "rested its decision on the nature of the statutory summary suspension process." *Hurlbert*, 238 Ill. 2d at 258-59, 938 N.E.2d at 514.

Anticipating this result, Plaintiff argues that the facts of *Felder* are distinguishable from this case. Both of the factual distinctions Plaintiff cites, however, relate to the court's

11

conclusion that the elements of collateral estoppel had been met in the case. The Court discusses those distinctions below, but notes here that neither has any bearing on the determination that impoundment hearings are distinct from statutory summary suspension hearings and can have preclusive effect on subsequent proceedings. Plaintiff has not provided any sound basis for rejecting the reasoning of *Felder*, and the Court declines to deny summary judgment on the theory that collateral estoppel does not apply to impoundment hearings.

### 2. Opportunity and Incentive to Litigate

Plaintiff next argues that she did not have a full and fair opportunity or incentive to litigate her case, claiming she was denied pre-hearing discovery she needed to present her case. Plaintiff contends that this distinguishes her case from *Felder* and precludes application of collateral estoppel. (Doc. 63, at 11-12). As noted, the *Felder* court barred the plaintiff from pursuing his false arrest claim because the ALO in that case determined that he agreed to pay Officer Bady for oral sex, which established probable cause for his arrest. In reaching that conclusion, the court first noted that the ALO had conducted a "full hearing" that "necessarily explored the circumstances of Felder's arrest in order to establish the underlying violation – solicitation of a prostitute – justifying the impoundment." 2009 WL 742774, at *3. The court acknowledged that impoundment hearings differ from judicial trials in that the formal rules of evidence do not apply, and respondents must obtain the ALO's leave to conduct pre-hearing discovery. *Id.* at *4. Nevertheless, the sworn testimony of two witnesses with first-hand knowledge of the alleged violation, along with closing arguments, sufficed to establish that "the proceeding 'incorporated all the essential elements of an adjudication.'" *Id.* (quoting *East Food & Liquor, Inc. v. United States*, 50

F.3d 1405, 1413 (7th Cir. 1995)).  In addition, despite the "relatively low stakes" at issue in the impoundment hearing, the court "believe[d] that Felder took the disputed issue, and hearing itself, 'serious[ly].'"  *Id.* at *6.  The court concluded that Felder "cannot re-litigate the ALO's finding that he agreed to pay Bady for oral sex.  This fact established probable cause to arrest Felder and defeats his claim under § 1983" for false arrest.  *Id.* at *8.

Plaintiff stresses that, unlike her, Felder did "not claim that he was denied pre-hearing discovery, nor d[id] he argue that additional evidence was necessary to fairly resolve the disputed issue."  *Id.* at *4.  To be sure, the ALO in this case did not allow Plaintiff to pursue discovery (or testimony) he viewed as a fishing expedition into matters that were not probative of whether she had narcotics in her car.  This included:  the substance of radio transmissions; documents relating to Officer Garza's disciplinary history; testimony that Officer Garza allegedly told Plaintiff she was provocatively dressed and that he has a military background; testimony that Officer Garza allegedly told Plaintiff about what the military is doing to Plaintiff's "people in the Middle East"; testimony about how Officer Garza allegedly "[got] on top of Plaintiff when she was handcuffed and leaning back in the back seat of the squad car"; testimony and photos concerning Plaintiff's alleged injuries due to her encounter with Officer Garza; and testimony concerning sexual and ethnic harassment.  (Doc. 63, at 4-5).  (*See also* Doc. 64 ¶ 13 ("This is pure discovery counsel. . . . It doesn't help me decide if there was narcotics in the car or not.")).

Plaintiff did, however, receive pre-hearing discovery reflecting the information the City intended to rely on at the hearing.  (Doc. 66, Ex. C, at 2).  Moreover, Plaintiff offers no explanation as to how any specific additional evidence that she has since obtained (through discovery in this action) conceivably would have altered the ALO's  analysis and

conclusion.  At the impoundment hearing, Plaintiff argued that she needed the discovery to establish that Officer Garza planted the drugs in her car.  (*Id.* at 4).  She was able, however, to cross-examine Officer Garza about that theory, as well as the fact that he had stopped her for another alleged traffic violation back in 2004.  She also testified about other encounters she had with Officer Garza, and Plaintiff's counsel asked the officer about other complaints and lawsuits filed against him.  (*Id.* at 20-21, 28, 30-31, 55-56).

Notwithstanding Plaintiff's inability to obtain certain discovery and elicit more testimony regarding Officer Garza's alleged harassment and misconduct during the traffic stop, the Court agrees with Defendants that the hearing "necessarily explored the circumstances of [Plaintiff's] arrest in order to establish the underlying violation – [drug possession] – justifying the impoundment."  *Felder*, 2009 WL 742774, at *3.  The ALO specifically addressed the drug planting issue and dismissed it as not credible.  (Doc. 66, Ex. C, at 74-75).  Prior to this finding, as in *Felder*, two witnesses with first-hand knowledge of the alleged violation (Plaintiff and Officer Garza) testified under oath at the hearing and were subject to cross-examination.   Neither Plaintiff nor Felder sought to secure the presence of any other witnesses (aside from Plaintiff's father, who testified on her behalf), and both delivered closing arguments.  *Felder*, 2009 WL 742774, at *4.  Unlike Felder, moreover, Plaintiff was represented by counsel.  Absent some showing that the additional discovery or testimony conceivably would have altered the ALO's finding, this Court is not persuaded that the mere fact that Plaintiff wanted more information and did not receive it demonstrates that she was deprived of a full and fair hearing sufficient to defeat application of collateral estoppel.

### 3.      Scope of Issues Resolved in Impoundment Hearing

In a somewhat related argument, Plaintiff claims that the limited nature of the defenses available to her at the impoundment hearing underscores the following problem:

> Police misconduct is not a defense under the terms of the impound statute and it is not the City Hearing Officer's job to adjudicate the issue; and, although the issue was addressed, such claims are not a necessary part of the City Hearing Officer's determination.

(Doc. 63, at 12, 13).  Plaintiff appears to be saying that, although the ALO considered and rejected her theory that Officer Garza had planted drugs in her car, this issue somehow was not "actually and necessarily litigated" as set forth in *LaSalle Bank*.  355 Ill. App. 3d at 635-36, 826 N.E.2d at 456.  The Court disagrees.

"For collateral estoppel to apply, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit."  *Talarico v. Dunlap*, 177 Ill. 2d 185, 191, 685 N.E.2d 325, 328 (1997).  There can be no question that Plaintiff actually litigated the issue of whether Officer Garza engaged in misconduct by planting drugs in her car.  Indeed, counsel for the City of Chicago acknowledged during the hearing that this was the "only cognizable defense" presented by Plaintiff.  (Doc. 66, Ex. C, at 68).  In addition, the ALO explicitly considered (and rejected) this defense:

> He [Officer Garza] would have had to have a vial of PCP in his pocket either that night when he left home, or he must have collected it off somebody else that he made an arrest on earlier in the night.  He must have been waiting for [Plaintiff] to drive by, and, as it happened, she drives by in a rental car, with which the officer would not have any particular familiarity.  The odds of somehow the officer being prepared for her that night with PCP in his possession to give to her to create a case, and for what purpose the case is created, I can't begin to fathom.

(*Id.* at 74-75).

The Court finds that this issue was also necessary for the judgment: had the ALO found that Officer Garza did in fact plant drugs in Plaintiff's car, then he could not also have found that the officer had probable cause to arrest her for drug possession. As for the other alleged misconduct by Officer Garza, Plaintiff has not demonstrated that it would have had any bearing on the ALO's determination that there were drugs in Plaintiff's car, except perhaps to the extent that it made Officer Garza seem less credible. In any event, the ALO was made aware of the other alleged misconduct during Plaintiff's testimony and there is no reason to believe that denials by Officer Garza on cross-examination would have shed light on whether the misconduct occurred.

Also unpersuasive is Plaintiff's objection that "there can be no estoppel as to the issue of false arrest as to the initial traffic stop, as there was no determination at the impoundment hearing of the issue of probable cause for the initial traffic stop." (Doc. 63, at 13). Plaintiff is correct that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 456 (7th Cir. 2010). Plaintiff is also correct that the ALO did "not clearly understand the addresses and how the sequence of events came out with the movement of the car." (Doc. 64 ¶ 17; Doc. 76 ¶ 17). Regardless, the only claims Defendants seek to preclude here are those that turn on probable cause for an arrest. Plaintiff's concerns about probable cause for the initial traffic violation are thus irrelevant. *See Brinson v. Syas*, 735 F. Supp. 2d 844, 852 (N.D. Ill. 2010) (citing *Rivera v. Burke*, No. 06 C 0734, 2008 WL 345612, at *5 (N.D. Ill. Feb. 7, 2008) ("[A] lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other

reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."))

### 4.    Equitable Considerations

Plaintiff finally argues that collateral estoppel cannot be applied because "changed circumstances and disputed factual issues . . . would result in unfairness" in this case. (Doc. 63, at 7).   As an equitable doctrine, collateral estoppel must not be applied, "[e]ven where the threshold elements of the doctrine are satisfied," unless "it is clear that no unfairness results to the party being estopped."  *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 391, 757 N.E.2d 471, 478 (2001).  Plaintiff contends that "the evidentiary basis for the impound finding was unsound," and insists that "principles of equity and fairness . . . should not permit Defendants here, who advance such diametrically conflicting stories on different occasions, to bar an opponent from showing that any or all of their versions of events are untruthful."   (Doc. 63, at 9).   Defendants, on the other hand, argue that the "inconsequential inconsistencies" between Officer Garza's statements during the 2008 impoundment hearing and his deposition testimony two years later are "distractions" and not a basis for denying preclusive effect to the ALO's judgment.  (Doc. 75 at 2).

This Court is not persuaded that the inconsistencies in Officer Garza's testimony are inconsequential.  Most significantly, the officer testified during the impoundment hearing two months after the arrest (as well as in the preliminary hearing three weeks after the arrest) that Plaintiff was alone in the car when he saw her toss the PCP vial, and that he recovered the vial from the empty passenger seat.  According to defense counsel, Officer Garza will testify at trial that this testimony was not accurate because there *was* a passenger in the car.  (Hearing Tr. of 4/22/11).  During his deposition, Officer Garza was

able to provide a detailed account of his interactions and discussions with this passenger two years earlier, even though the arrest report made no mention of a passenger. As illustrated in the deposition excerpts below, the passenger's actions and statements were far from insignificant. Officer Garza testified that the passenger not only attempted to conceal the vial between her legs but also admitted to him that the vial contained PCP.[4] After this, the passenger was handcuffed to the Plaintiff for a period of time, though she later was driven to an intersection near her home and released.

> Q. Okay. And who was in Ms. Sughayyer's vehicle?
> A. I believe Portalatin -- I don't know her first name.
>
> Q. Excuse me?
> A. Passenger. And Ms. Sughayyer -- Sughayyer.
>
> \* \* \* \* \*
>
> Q. How many people were in Ms. Sughayyer's vehicle when you stopped it?
> A. Just one. One passenger.
>
> \* \* \* \* \*
>
> Q. And do you know the first name of this person?
> A. I believe it was Jannette.
>
> \* \* \* \* \*

---

[4]     As noted earlier, the contents of the vial were eventually tested in a lab and found to contain PCP. However, the lab report was not issued until three days after the officers prepared an arrest report stating that Plaintiff possessed PCP. Plaintiff used this fact during the impoundment hearing to argue that Officer Garza must have planted the vial of PCP. (Doc. 66, Ex. C, at 41) ("The arrest report, felony arrest report that was filed against my client says she knowingly and unlawfully had in her possession a liquid containing PCP. It doesn't say that -- any suspected anything. He did not know, as he admits, until three days later, that any lab tests came back. The only way he would have known that this is PCP in the car is if this officer, Officer Garza, had planted that item in the car itself.")

Q. You're aware that this woman was in Ms. Sughayyer's car at the time that you encountered her on July 20th. Correct?
A. Yes.

Q. And you have been aware of that from that time ever since, right?
A. Yes.

* * * * *

Q. And as you approached the doors, what was the first communication that anyone had with anyone inside the vehicle?

* * * * *

A. I asked Portalatin what was that. You know, she -- whatever fell between her legs. And I asked her step out of the vehicle.

Q. You say you saw something bounce off the window, correct?
A. When -- the passenger side window into the lap of Portalatin. And it was like in the seat area.

Q. Did you also see it bounce off the window and into her lap from your vantage point --
A. As I approached -- I observed it. She was trying to close her legs to hide it.

* * * * *

Q. Did you and Officer Campbell cuff them yourselves before a female arrived?
A. Yes, handcuffed them together. Officer Campbell handcuffed Sughayyer and we handcuffed her to Portalatin.

* * * * *

Q. Did you start to ask this woman questions after the search, the other woman you said was in the car? Did you question her?
A. I asked her where did she get this from and what is it.

Q. And what did she say?
A. She said it was PCP. But we aren't going to test it out there. We take it in to get it analyzed.

Q. What you're telling me is that when you were questioning Ms. Portalatin as to what this was and where it was from on the scene of the stop of Ms. Sughayyer, she told you that it was PCP, correct?
A. Yes.

Q. Did she tell you anything about where it was from?
A. She wouldn't tell me where -- where she got it from.

Q. Did she say it was hers?
A. She denied that it was hers and didn't say it was Sughayyer's.

Q. Did she say anything else to you?
A. No, just that she didn't want her husband finding out and that was about it. That's when we went all to the -- well, Officer Fazy and O'Brien transported Sughayyer to the Eighth District station and we drove Ms. Portalatin to her residence or half a block away from her residence. And that's when I drove the rental car, Ms. Sughayyer's automobile, to -- I followed my partner. And then we finally went to the Eighth District station.

* * * * *

Q. Then what did you do?
A. She asked -- I'm -- I'm -- I was like, well, we're going to take you home. And she's like, well -- she was crying, she didn't want us to take her home. I wasn't going to leave her there on the street. So me and my partner said, you know, we'll -- we'll take you, drop you off down the block. So she said, well, no how about just stop in the alley, because I don't want any of you -- my neighbors seeing what's going on. And I'm like that's fine. So we -- she got in the back seat of the squad car. We drove away. I followed my -- my partner to 63rd and Komensky. Went back through the alley and then that's where we got out. It was about maybe three minutes. Then we proceeded to the station.

(Garza Dep., 53-55, 61-62, 69, 91-93, 99-100).

As noted previously, defense counsel informed the Court that Officer Garza has no explanation for why he testified under oath at the impound hearing (and preliminary hearing) that Plaintiff was alone in the car.[5]   It is also odd that there is no mention of Ms.

---

[5]     During the impound hearing, Officer Garza testified:

Q. Do you recall what side of the vehicle you approached?
A. I approached it from the passenger side of the vehicle.

Q. And do you recall how many individuals were in the vehicle?
A. Just the driver.

* * * * *

Portalatin in the arrest report given that the officers arrested Plaintiff for drug possession and Ms. Portalatin allegedly attempted to conceal the vial and later admitted to the officers that it contained PCP. Officer Garza reportedly was able to identify Ms. Portalatin as the passenger in the car after the lawsuit was filed because he arrested her in November 2008 for driving under the influence of a narcotic substance, and recorded her name at that time. (Garza Dep., at 55-56). When Ms. Portalatin was deposed after this lawsuit was filed, she reportedly acknowledged that she was a passenger in Plaintiff's rental car when it was stopped by Officers Garza and Campbell. She further admitted that she is a PCP user and has a criminal record of PCP use.

---

Q. What happened after you approached the vehicle?
A. I observed the driver toss to the right side, passenger side, an object. I wasn't sure what it -- exactly what it was until I actually went up to the door and observed it through the window.

\* \* \* \* \*

Q. And you said you -- you saw her toss an item, but you couldn't identify what it was? You didn't know what it was at that time?
A. I didn't know. I assumed it was narcotics.

Q. Why would you assume it was narcotics?
A. Previous stops with this type of narcotics in small vials.

\* \* \* \* \*

Q. And where did you recover this item in the vehicle?
A. In the passenger seat.

Q. And was it just on top of the seat, inside the --
A. On top.

(Doc. 66, Ex. C, at 8-9, 11).

Plaintiff's counsel informed the Court during the hearing on the pending motion that he intends to argue to the jury that Officer Garza lied during both the impoundment hearing and his deposition, and also that he secured the false testimony of Ms. Portalatin in an effort to "dirty up" Plaintiff and strengthen the defense. (Hearing Tr. of 4/22/11). Counsel will attempt to bolster this argument by pointing to Officer Garza's changed testimony, the fact that criminal charges against Ms. Portalatin following her own arrest by Officer Garza were dismissed, and Ms. Portalatin's apparent difficulty in answering questions about the events in question during her videotaped deposition. In addition, counsel will attempt to impeach the officers' claim that they made a call to dispatch when they dropped Ms. Portalatin off near her home, since police records apparently do not reflect such a call. Finally, Plaintiff will testify that she was alone in the rental car and did not possess any drugs. (*Id.*).

This Court does not know what happened on the day in question or who is telling the truth. What it does know is that Officer Garza has inexplicably recanted certain material testimony that he gave under oath during the impoundment hearing. His changed testimony and acknowledgment that he gave incorrect testimony under oath on a prior occasion will certainly create fodder for Plaintiff to attack his credibility at trial – just as it would have if the changed testimony had been given during the impoundment hearing. Imagine that Officer Garza had testified during that hearing (consistently with his deposition) that Plaintiff was *not* alone in the car and instead was accompanied by a passenger who attempted to conceal the vial, admitted that it contained PCP, and was handcuffed to Plaintiff for a period of time before being released. On cross-examination, Plaintiff's counsel undoubtedly would have asked the officer why he had testified under

oath at the preliminary hearing a mere three weeks after the stop that Plaintiff was alone in the car.

In response, Officer Garza apparently would have stated that the prior testimony was inaccurate and his current testimony was true, but would have been unable to offer any explanation for the discrepancy.[6] Had the ALO heard this evidence, he certainly may have questioned the officer's credibility or been unwilling to find against Plaintiff, at least without hearing additional evidence. Since the ALO's decision was dependent upon a finding that Officer Garza was a credible witness, this Court is not persuaded that the changed testimony was inconsequential and could not have altered the outcome of the case.

In sum, this is not a case involving minor (and understandable) inconsistencies between earlier and later testimony, or differences that are readily explained because of intervening events. Given the acknowledgment by Defendants that Officer Garza's testimony before the ALO was inaccurate, the lack of any explanation for the inaccurate testimony, and this Court's determination that the changed testimony was material, the Court believes that it would be unfair to collaterally estop Plaintiff from litigating the false arrest and malicious prosecution claims. *Nowak*, 197 Ill. 2d at 391, 757 N.E.2d at 478 ("[C]ollateral estoppel must not be applied to preclude a party from presenting its claim unless it is clear that no unfairness would result to the party being estopped."); *Fred Olson*

---

[6]     When this Court learned of the sequence of events, it seemed possible that Officer Garza had gone into the preliminary hearing unprepared and without reviewing the arrest report, and so forgotten that there was a passenger in the car. But the arrest report makes no mention of a passenger so reviewing the report would not have refreshed his memory. Moreover, Officer Garza seemed to have excellent recall of his interactions and discussions with the passenger two years later during the deposition.

*Motor Serv. v. Container Corp. of America*, 81 Ill. App. 3d 825, 401 N.E.2d 1098 (1st Dist. 1980) (prior adjudication is not binding for want of essential evidence or testimony where the evidence was crucial to proper resolution of first action and litigant opposing estoppel bore no responsibility for absence of the evidence). *Cf. Daniel v. Village of Hoffman Estates*, 165 Ill. App. 3d 772, 775, 520 N.E.2d 754, 756 (1st Dist. 1987) ("[A] factual determination obtained by fraud cannot be justly used to estop litigation on that issue in a later proceeding."); *LaSalle Bank,* 355 Ill. App. 3d at 642, 826 N.E.2d at 461 (changed circumstances after prior judgment "create[d] disputed issues of fact that preclude[d] the granting of" a motion to dismiss on collateral estoppel grounds).[7]

This Court is also mindful that the doctrine of collateral estoppel "'is intended to promote judicial economy," *People v. Pawlaczyk*, 189 Ill. 2d 177, 189, 724 N.E.2d 901, 909 (2000) (citing *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 460, 672 N.E.2d 1149, 1155 (1996)), and the Court must "balance the need to limit litigation against the right to a fair adversary proceeding in which a party may fully present its case." *LaSalle Bank,* 355 Ill. App. 3d at 636, 826 N.E.2d at 456. In this case, the Court and the parties will be immersed in a trial involving the same witnesses and testimony regardless of whether collateral estoppel is applied since Plaintiff has other claims arising out of the same events.

---

[7]     As Defendants point out, each of the Illinois decisions is distinguishable in certain respects from the case before this Court. For example, unlike the defendants in *Daniel*, Officer Garza has not admitted to deliberately lying to the ALO, and it is not clear that he has engaged in fraud. Nonetheless, the cases are illustrative of the fact that collateral estoppel is "not a rigid doctrine and should be applied only as fairness and justice require under the circumstances of each case." *Fred Olson*, 81 Ill. App. 3d at 830, 401 N.E.2d at 1102.

For all of these reasons, under the particular circumstances presented here, the Court is persuaded that it would be unfair to apply the doctrine of collateral estoppel to Plaintiff's false arrest and malicious prosecution claims instead of allowing the jury to decide those claims based on all the evidence.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Partial Summary Judgment [Doc. 59] is denied.

ENTER:

Dated: May 5, 2011

SHEILA FINNEGAN
United States Magistrate Judge