**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HASBBIN SUGHAYYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 4350** |
| | ) | |
| **CITY OF CHICAGO, a municipal** | ) | **Magistrate Judge Finnegan** |
| **corporation, OFC. RUDOLPH GARZA and** | ) | |
| **OFC. SEAN CAMPBELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hasbbin Sughayyer filed suit under 42 U.S.C. § 1983 asserting multiple claims against Defendants the City of Chicago (the "City"), Officer Rudolph Garza, and Officer Sean Campbell arising from a traffic stop and arrest on July 20, 2008. Specifically, Plaintiff alleged that: (1) Defendant Garza used excessive force against her (Count II); (2) because of her religion, ethnicity or sex, Defendants Garza and Campbell treated her differently than others by falsely arresting her and using excessive force against her in violation of her right to equal protection of the laws (Count III); (3) Defendants Garza and Campbell falsely arrested her when they pulled over her car and detained her for an alleged failure to make a signal required by the Illinois Motor Vehicle Code (Count IV); (4) Defendants Garza and Campbell falsely arrested her when they took her into custody for possession of a narcotic substance, a vial of PCP that she denied the officers had recovered from her car (Count IV); (5) Defendants Garza and Campbell intentionally inflicted emotional distress upon her (Count VI); (6) Defendants Garza and Campbell caused her to be maliciously prosecuted for possession of PCP (Count VII); (7) Defendant

City, through an employee or employees, converted her property, namely, jewelry and cash that was missing from her purse following the arrest (Count VIII); and (8) Defendant City was liable for the Defendant Officers' actions pursuant to 735 ILCS 10/9-102 (Count IX).[1]

Following a five-day trial, on June 23, 2011, the jury found in favor of Plaintiff on her excessive force and conversion claims, and awarded a total of $12,937 ($11,937 for excessive force and $1,000 for conversion). The jury found in favor of Defendants on the malicious prosecution claim. It failed to reach a verdict as to the remaining claims and Plaintiff subsequently dismissed them with prejudice.

Plaintiff now seeks to recover $314,259.68 in attorneys' fees under 42 U.S.C. § 1988, and $8,968.66 in costs pursuant to FED. R. CIV. P. 54(d)(1) and 28 U.S.C. § 1920. For the reasons set forth here, Plaintiff is awarded $179,122.83 in fees and expenses, and $8,447.36 in costs.

## DISCUSSION

In Section 1983 cases, a court has discretion to award "the prevailing party . . . a reasonable attorney's fee as part of the costs" pursuant to 42 U.S.C. § 1988. *Walker v. Calumet City, Illinois*, 565 F.3d 1031, 1033 (7th Cir. 2009). In addition, Federal Rule of Civil Procedure 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party" unless "a court order provides otherwise." Defendants argue that Plaintiff cannot recover any fees or costs because she achieved only nominal success relative to the relief she sought from this lawsuit. Alternatively, Defendants insist that any award of fees must be substantially reduced, and that her cost award must be modified to

---

[1]     Plaintiff also asserted a § 1983 *Monell* claim against the City (Count I) and a battery claim against Defendant Garza (Count V), but abandoned both claims before trial.

exclude excessive deposition transcript charges. The Court considers each argument below.

## A.    Prevailing Party under Section 1988

To be a prevailing party for purposes of federal fee-shifting statutes like 42 U.S.C. § 1988, a plaintiff must "succeed on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under the Supreme Court's "generous formulation," a plaintiff may qualify as a prevailing party even if she receives only a nominal damages award. *Farrar v. Hobby*, 506 U.S. 103, 109, 112 (1992). As the Court explained, "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113. At the same time, "[a] paltry jury award – for example, $1 in *Farrar* – implies that the only reasonable fee is zero." *Cole v. Wodziak*, 169 F.3d 486, 488 (7th Cir. 1999); *Thompson v. City of Chicago*, No. 07 C 1130, 2011 WL 2837589, at *4 (N.D. Ill. Feb. 14, 2011).

Defendants initially concede that Plaintiff is "technically a 'prevailing party' under § 1988," (Doc. 157, at 3), but later describe her prevailing party status as "questionable at best." (*Id.* at 9). In the Court's view, there can be no dispute that Plaintiff obtained a judgment in her favor on the excessive force claim and so is a prevailing party under the fee-shifting statute.[2] Defendants argue that Plaintiff is not entitled to fees, however, because her recovery of $11,937 was merely nominal as contemplated by *Cole* and *Farrar*.

---

[2]    Plaintiff does not quarrel with Defendants' assertion that the verdict against the City on the state law conversion claim does not entitle her to attorneys' fees. (Doc. 157, at 2). Defendants also observe that the Court was prepared to dismiss the conversion claim on legal grounds had Defendants not withdrawn their motion for a directed verdict. (*Id*).

(*Id.* at 3). In the words of the *Farrar* Court, "[a] plaintiff who seeks compensatory damages but receives no more than nominal damages is often [the type of] prevailing party" who "should receive no attorney's fees at all." 506 U.S. at 115. It is true that Plaintiff received a much smaller amount in damages than the $260,000 she sought. Nevertheless, in this Court's view, an award of nearly $12,000 (excluding the award for the conversion claim) is not "so 'nominal' as to bar an award of fees all together." *Thompson*, 2011 WL 2837589, at *4 ($15,000 award not nominal). *See also Cole*, 169 F.3d at 488 (where plaintiffs recovered $2,500 in compensatory damages and $2,000 in punitive damages, they were "prevailing parties and entitled to 'reasonable' fees.").

Defendants disagree, arguing that the large disparity between the amount Plaintiff requested and the amount she was awarded "has been held to justify an absolute bar on attorney's fee petitions." (Doc. 157, at 9). Defendants direct the Court to *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585 (7th Cir. 2000), where the Seventh Circuit stated that "it is right to penalize a plaintiff for putting the defendant to the bother of defending against a much larger claim than the plaintiff could prove." *Id.* at 592. As Defendants see it, Plaintiff recovered "less than 5% of [her] demand in closing arguments," (Doc. 157, at 3-4, 9), and she should not be awarded any fees under such circumstances. *See, e.g., Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir. 1999) ("Recovery of less than 10% of the claim shows that . . . the defendant has won on the bulk of the seriously disputed items.").

Plaintiff's failure to recover even 5% of the damages that she sought is certainly a factor that this Court must consider in assessing the fee request, but it is not the only factor. *See Tuf Racing Prods.*, 223 F.3d at 592 (observing that *Perlman* states the 10% standard

4

"in a way that makes it sound like a rule, although the cases it cites for the rule treat it, rather, merely as a factor to consider along with other factors weighing for or against an award of attorneys' fees."). In this case, Plaintiff requested the jury to award $22,000 in compensatory damages against Officer Garza for the use of excessive force, and the jury awarded almost half of this amount. While the jury found in Defendants' favor on the malicious prosecution claims against both officers, Plaintiff sought only $10,000 in damages on these claims.

Plaintiff attributed the bulk of her compensatory damages ($120,000 of the $170,000 sought) to the alleged false arrest for possession of narcotics, a claim on which the jury was unable to reach a unanimous verdict. The jury also deadlocked on several other claims: false arrest for a traffic violation ($2,000 sought); intentional infliction of emotional distress for verbal abuse by the officers ($5,000 sought); and denial of equal protection from the officers' mistreatment based on Plaintiff's ethnicity ($10,000 sought). The jury similarly was unable to agree on Plaintiff's request for $90,000 in punitive damages: $50,000 against Officer Garza and $40,000 against Officer Campbell. Ultimately, Plaintiff chose to dismiss each of the deadlocked claims rather than retry the entire case before a new jury.[3]

---

[3] After learning that the jury was unable to reach a unanimous verdict on all counts despite further deliberations, Plaintiff asked the Court to allow the jury to return a partial verdict. Defendants opposed this and asked that a mistrial be declared on all claims. Because of the overlapping nature of the evidence and damages related to the numerous claims, the Court determined that a single jury should decide all claims and damage awards. Plaintiff then agreed to dismiss with prejudice any claims on which the jury turned out to be deadlocked (obviating the need for a second jury to decide a subset of the claims), and the jury was allowed to return its verdict.

Because of the intertwining nature of the claims and facts, all flowing from a single traffic stop, the five-day trial in this case would not have been significantly shorter had Plaintiff opted to pursue only the excessive force claim. Indeed, of the eleven witnesses called to testify over four trial days, all but one (the individual who tested the PCP) gave testimony that focused at least in part on Plaintiff's allegations of excessive force and the ensuing damages. Plaintiff in particular testified at great length about each of the ways that Officer Garza used excessive force against her on the sidewalk and in the back seat of the squad car, and her resulting injuries. This included a detailed description of the scrapes and bruises she incurred from the excessive force while her attorney showed the jury numerous related photos. Plaintiff also called three damages witnesses: two health professionals, Dr. David Krueger and Dr. Laura Patton VanBuskirk, and her father, Zuhdi Sughayyer. Virtually all of Dr. Krueger's testimony pertained to the excessive force claim since he described the chiropractic and other treatment that he provided for the injuries. Dr. VanBuskirk testified about Plaintiff's post-traumatic stress disorder ("PTSD") that allegedly resulted from the collective events that day, though Plaintiff's counsel attributed the PTSD primarily to the alleged false arrest on the narcotics charge. Plaintiff's father testified generally about the physical and emotional differences that he noticed in his daughter after the events that day.

Defendants too elicited testimony from several witnesses concerning the excessive force allegations.[4] Of course, Officers Garza and Campbell testified in detail about their interactions with Plaintiff and denied the use of any force. Officers who arrived after the

---

[4] This was done during cross-examination of the defendant officers and other witnesses called during Plaintiff's case.

arrest, such as Sergeant David Sepulveda, were questioned about how Plaintiff did not appear to have injuries when they saw her. Even the passenger in Plaintiff's car, who testified primarily about the allegations that PCP was found in the car, was asked by defense counsel whether she witnessed Officer Garza or Officer Campbell abuse Plaintiff in any way. While the witnesses gave additional testimony that was not directly relevant to the excessive force claim, some of this testimony would have been necessary for context even if Plaintiff had never brought the other claims.

For these reasons, this Court is not persuaded that this was a case where Defendants were put "to the bother of defending against a much larger claim than the plaintiff could prove." *Tuf Racing Prods.*, 223 F.3d at 592. The already short trial certainly would have been somewhat shorter had Plaintiff brought only the excessive force claim, but not significantly so. Therefore, the Court declines to penalize Plaintiff by denying her attorneys' fees altogether, and instead finds that the jury's award of almost $12,000 on the excessive force claim is sufficient to render Plaintiff a prevailing party and entitle her to reasonable fees.

**B.      Prevailing Party under Rule 54(d)**

In a related argument, Defendants claim that Plaintiff does not qualify as a prevailing party for purposes of recovering costs under Rule 54(d). A party prevails within the meaning of that Rule "when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009). "When a party obtains substantial relief, it prevails even if it does not win on every claim." *U.S. Fidelity and Guar. Co. v. Shorenstein Realty Servs., L.P.*, 803 F. Supp. 2d 920, 923 (N.D. Ill. 2011) (citing *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999)). A district court enjoys

"wide discretion in determining and awarding reasonable costs." *Testa v. Village of Mundelein, Illinois*, 89 F.3d 443, 447 (7th Cir. 1996).

Defendants contend that Plaintiff did not achieve substantial relief because she asserted upwards of 12 separate claims against three defendants, but the conversion claim aside, was ultimately successful on only a single excessive force claim against Defendant Garza. (Doc. 143, at 2-3). As noted, Defendants find it significant that Plaintiff recovered "less than 5% of the amount her attorney requested from the jury in closing argument," and also maintain that the one successful excessive force claim "was not the central issue in the litigation." (*Id.* at 3). Defendants further stress that Plaintiff received compensatory damages for medical expenses but no punitive damages, and insist that this recovery pales in comparison to the size of the case she tried. (*Id.*).

As in the attorneys' fee context, it appears that the 10% threshold is "just a factor for consideration in a cost determination rather than a hard and fast rule." *Valley Air Serv., Inc. v. Southaire, Inc.*, 432 Fed. Appx. 602, 607 (7th Cir. 2011). For the reasons discussed previously, this is not a case where Defendants were required to defend a "much larger claim" than Plaintiff could prove. Further, the excessive force claim was one of the central issues in the case about which there was considerable testimony. Therefore, the Court finds that Plaintiff is a prevailing party for purposes of Rule 54(d), and she is entitled to costs. *Compare First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) (plaintiff was not the prevailing party under Rule 54(d) where it lost on all but one of seven claims on summary judgment, before even making it to trial).

C.      **Reasonable Attorneys' Fees**

Having determined that Plaintiff is entitled to attorneys' fees, the Court next considers what constitutes a "reasonable" amount.  In making this assessment, the Court uses the lodestar method, which entails "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'"  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley*, 461 U.S. at 433).  The lodestar amount may then be adjusted based on factors set forth in *Hensley*, but "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award."  *Id.*

According to their time records, Plaintiff's three attorneys, Mark Parts, Faith Spencer and Joseph Lopez, worked a total of 1,072.4 hours which, at their requested rates, amounts to fees of $471,390.  (Doc. 158, at 14).  This consists of 687.2 hours for Mr. Parts at $450 per hour, 250.8 hours for Ms. Spencer at $325 per hour, and 134.4 hours for Mr. Lopez at $600 per hour.  Plaintiff recognizes, however, that her verdict, "though significant, was not all that she had hoped for."  (*Id.* at 2).  She suggested to the jury that they award $260,000 in damages (with $90,000 of this amount as punitive damages), and they only awarded $12,937 in compensatory damages.  As a result, Plaintiff is willing to reduce the lodestar amount by one-third, for a total of $314,259.68.  (*Id.* at 14).  Defendants argue that the amount must be reduced much further to at most $72,128.75.  (Doc. 157, at 12).

### 1. Lodestar Amount

The parties disagree regarding an appropriate lodestar amount, with Defendants maintaining that Plaintiff's requested hours and rates are unreasonable. The Court considers both elements in turn.

#### a. Number of Hours

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. *See also Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012). In addition, "the court may reduce the award where the description of the work performed is inadequate." *Thompson*, 2011 WL 2837589, at *7. Defendants first object that many of the descriptions of work performed are vague and "provide little insight into whether the hours were reasonably expended." (Doc. 157, at 4; Doc. 157-1, Ex. A). For example, the time records of Mark Parts contain numerous entries stating "teleconference with Joe Lopez" (Joseph Lopez's time records similarly state "teleconference with Mark Parts") without any mention of the topic discussed. In response to Defendants' objections, Plaintiff's attorneys submitted new versions of their time records that include additional supporting details, such as the subject matter of teleconferences. (Doc. 158-1, Exs. 14, 15, 16).

The Court has reviewed the revised submissions and overrules Defendants' objections on vagueness grounds except where otherwise noted below; however, the Court will not allow Plaintiff to recover for time spent editing and supplementing time entries in response to the vagueness challenge (approximately 2.5 hours of work by Mr. Parts). It is the responsibility of counsel to keep detailed time records as work is performed in order

to ensure they are accurate. Had this been done, it would not have been necessary for Mr. Parts to spend time filling in missing information years later.

Defendants contend that many entries still reflect that "the time expended was excessive or duplicative of the work of [P]laintiff's other attorneys." (Doc. 157, at 5). The objections may be divided into four categories: (1) time spent on a summary judgment motion; (2) number of trial attorneys; (3) time spent preparing this fee petition; and (4) time spent on miscellaneous additional tasks.

### i. Summary Judgment

Defendants first claim that Plaintiff's attorneys expended far too much time responding to a motion for summary judgment. Defendants calculate that Mr. Parts spent a total of 68.6 hours researching and writing that response, and Ms. Spencer spent an additional 63.4 hours, for a total of 132 hours, which translates to $51,475. Yet the motion covered only two of Plaintiff's claims (false arrest and malicious prosecution), and involved a discrete question regarding the application of collateral estoppel. Moreover, Defendants' counsel spent just 34 hours on both the initial memorandum and the reply brief. (Doc. 157, at 5).

Plaintiff maintains that her response brief incorporated much more factual information than Defendants' briefs, including a one-page chart summarizing conflicting testimony provided by Defendants Garza and Campbell at an impound hearing and in their depositions. (Doc. 146, at 8). She also argues that the law regarding the collateral estoppel issue was "far from settled," and suggests that Defendants' billing records are misleading because they exclude any time the City of Chicago Corporation Counsel spent on the case. (*Id.* at 9; Doc. 158, at 11).

11

The Court finds that 132 hours is excessive for the summary judgment response brief, meriting a 50% reduction. Plaintiff's memorandum was only 15 pages long, and the Court disagrees that the collateral estoppel issue was unusually complicated or difficult. Plaintiff may recover for 34.3 hours of Mr. Parts's time, and 31.7 hours of Ms. Spencer's time, for a total of 66 hours relating to the summary judgment motion.

### ii.    Number of Trial Attorneys

As a second example of Plaintiff's excessive attorney time, Defendants note that she had three lawyers preparing for and trying the case. Defendants object to having three attorneys engaging in pretrial preparation, and argue that time spent by either Ms. Spencer or Mr. Lopez during that period should be excluded. (Doc. 157, at 5). Defendants also argue that "[i]t was completely excessive for Ms. Spencer to attend and bill entire trial days" along with Mr. Parts and Mr. Lopez. (*Id.*). In response, Plaintiff recounts all the witnesses who were called to testify in the case, and claims that "[e]xtensive planning and preparation . . . was essential" for impeaching witnesses with clips from their videotaped depositions. (Doc. 158, at 11-12). Plaintiff also notes that she bore the burden of proof at trial, which she says required her to spend more time on the litigation. (*Id.* at 11) (citing *Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897, at *4 (N.D. Ill. Mar. 18, 2008)) (citing Florida district court case for the proposition that "[u]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant.").

Notwithstanding Plaintiff's burden of proof, the Court is not persuaded that this case was either so complicated or large as to justify three trial attorneys. Indeed, Ms. Spencer did not question any witnesses or make any arguments during the trial. It would have been

12

reasonable in this particular case to have two trial lawyers – a senior lawyer assisted by someone more junior and lower-priced – along with a paralegal.[5] Though Plaintiff's counsel did not use a paralegal for trial or trial preparation, it would have been reasonable to do so. Thus, the Court will allow recovery for 50 hours of Ms. Spencer's time during this period, but compensated at the rate of $100 per hour.[6] Ms. Spencer's remaining hours during this period are not allowed. All of the hours expended by Mr. Parts and Mr. Lopez to prepare for and try the case will be allowed.

### iii.    Preparing Fee Petition

Plaintiff's attorneys expended time organizing time records and working on the fee petition and bill of costs between July and December 2011. Defendants did not address this category of fees in their memorandum. They did, however, insert the words "[e]xcessive, vague" under each of the fee petition-related time entries of Mr. Parts and Mr. Lopez in July and August 2011, objecting in this manner to a total of 19.3 hours. (Doc. 157-1, Ex. A, at 45, 53).

Courts have recognized that "when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition." *Delgado v. Mak*, No. 06 C 3757, 2009 U.S. Dist. LEXIS 131241, at *2 (N.D. Ill. Apr. 23, 2009) (quoting *Trustees of Chicago*

---

[5]    Plaintiff's three attorneys expended a total of 338 hours preparing for trial between May 7 and June 12, 2011, while the defense team worked 155 hours, including 32.7 hours attributable to a paralegal. During the trial and jury deliberations (June 13 - 23, 2011), Plaintiff's team worked 211.3 hours, while the defense team worked 160.8 hours, including 11.4 hours attributable to a paralegal.

[6]    The defense team's paralegal worked 44.1 hours during this same period and her billing rate was $100 per hour.

*Plastering Institute Pension Trust*, 2008 WL 728897, at *6). *See also Greyhound Fin. Corp. v. TSM Fin. Group, Inc.*, No. 92 C 3750, 1995 WL 562068, at *6 (N.D. Ill. Sept. 21, 1995) ("Fees incurred in defending the award of reasonable attorneys' fees are themselves recoverable. Otherwise, the fee will undercompensate."). Defendants do not argue otherwise. Nor do they provide an explanation as to what specific information is lacking from the challenged time entries or why the time is excessive. Therefore, the objection to time spent related to the fee petition in July and August of 2011 is overruled.

The Court notes, however, that Plaintiff seeks compensation for a total of 103 hours of work in connection with the fee petition and bill of costs. This includes 23.7 hours of legal research: 13.7 hours performed by Mr. Parts and 10 hours performed by Ms. Spencer. Not only is this number of hours excessive, but the billing records are vague, stating only "research re fee petition" or words to this effect. Therefore, the Court is reducing the legal research time by half, allowing 7 hours of research by Mr. Parts and 5 hours by Ms. Spencer.

### iv. Additional Objections

Defendants also challenge 5.5 hours Ms. Spencer spent researching and drafting a motion *in limine* to exclude witnesses not previously disclosed. (Doc. 157-1, Ex. A, at 3). Contrary to Defendants' assertion, this motion is eight pages long, not one paragraph, and consists of several arguments. (Doc. 100). The objection to this time entry is overruled. Also overruled is Defendants' objection to the amount of time Mr. Parts spent communicating with Plaintiff. Based on the Court's observation of Plaintiff at trial, it was apparent that she likely required a great deal of attention throughout the case. Counsel

designated Mr. Parts as Plaintiff's primary contact, and the Court is satisfied that "there is virtually no double-billing for any of the communications with Plaintiff." (Doc. 146, at 8).

Defendants' objection to time Mr. Parts spent preparing for and attending an impound hearing in September 2008 before this lawsuit was filed is sustained (a total of 6.2 hours). (Doc. 157-1, Ex. A, at 8). Plaintiff observes that the summary judgment motion was based on this hearing, (Doc. 146, at 8, n.4), but that is not a reason Defendants should have to pay for Mr. Parts's time there. Plaintiff may, however, recover the 10.2 hours of time Mr. Lopez spent on this case prior to entering an appearance on March 2, 2011. Defendants raise this objection in a footnote without any citation, and the Court is not aware of any case stating that an attorney cannot recover for time spent on a case before an appearance has been filed. The Court accepts Mr. Lopez's representation that he is seeking to recover solely for work done in connection with this lawsuit and not for time spent on Plaintiff's criminal case.

The Court also overrules Defendants' objection to the 5.7 hours Mr. Parts spent preparing Rule 26(a) disclosures. The amount of time does appear somewhat high, but may have been necessary.

### v.    Summary

In sum, the Court will reduce Mr. Parts's time by 49.7 hours, and Ms. Spencer's time by 126.3 hours.

### b.    Hourly Rate

Defendants next argue that all three of Plaintiff's attorneys are seeking an excessive hourly rate for their time in this case. An attorneys' reasonable hourly rate is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v.*

15

*Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)).  The court presumes that an attorney's "actual billing rate for similar litigation is appropriate to use as the market rate."  *Id*.  The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases."  *Id*. (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)).  The party seeking fees bears the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community."  *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  Once the fee applicant satisfies this burden, the other party must provide "a good reason why a lower rate is essential."  *Id*. (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996)).

### i.    Joseph Lopez

Defendants begin by challenging Mr. Lopez's stated hourly rate of $600.  Plaintiff attempts to justify this rate by noting that Mr. Lopez is a 1983 law school graduate with more than 25 years of trial experience, and observing that the hourly billing rates for attorneys at large Chicago law firms who have similar experience and expertise "well exceed $600."  (Doc. 146, at 9-10; Lopez Aff., Doc. 146-5 ¶ 2).  As a preliminary matter, the only support provided for Mr. Lopez's stated rate is his own affidavit, which courts have found to be insufficient.  *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services.").  Plaintiff has not submitted any invoices indicating that clients customarily pay Mr. Lopez $600 per hour for his work, nor has she directed the Court to

16

any cases where he has been awarded a similar rate. *See, e.g., Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010) (awarding attorney with more than 25 years of experience a rate of $300 per hour where there was no evidence that he actually commanded the requested rate of $425 per hour). To the contrary, a district court recently awarded Mr. Lopez a 2008 rate of just $375 per hour. *Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *21 (N.D. Ill. Apr. 16, 2012).

Moreover, Plaintiff identifies no comparable lawyer who has ever received $600 per hour in a § 1983 civil rights case. Jon Loevy, whose performance Chief Judge Holderman has said "ranks among the finest displays of courtroom work by a plaintiffs' lead trial counsel . . . in several years," *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *3 (N.D. Ill. Feb. 13, 2012), submitted an affidavit on behalf of Mr. Parts stating that the highest rate he has been awarded is $425 per hour. (Loevy Aff., Doc. 158-5, ¶¶ 7-8). *See also Thompson v. City of Chicago*, No. 07 C 1130, 2011 WL 2923694, at *3-4 (N.D. Ill. July 18, 2011) (affirming hourly rate of $425 per hour for experienced Chicago civil rights attorney David Cerda).

Plaintiff argues that Mr. Lopez is nonetheless entitled to $600 per hour based on the Laffey Matrix, which is "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett*, 664 F.3d at 649. According to the Laffey Matrix, the market rate for attorneys with Mr. Lopez's experience is $734 per hour. As the *Pickett* court noted, however, district courts in this Circuit have reached "divergent opinions" regarding the usefulness of the Laffey Matrix. *Id.* at 650 (citing cases). This Court agrees with the judgment recently expressed in *Ragland v. Ortiz*, No. 08 C 6157

(N.D. Ill. Feb. 17, 2012), that "the Laffey Matrix's use of years of practice as a proxy for experience and skill (and thus the market rate that is commanded by an attorney) becomes increasingly crude – and decreasingly helpful – in the 8 to 10 year, 11 to 19 year, and 20-plus year brackets." Slip op., at 8. With respect to Mr. Lopez, who has been practicing law for almost 30 years, the Laffey Matrix rate of $734 per hour far exceeds the rate highly experienced attorneys in this jurisdiction have received in § 1983 cases. *Cf. Elusta*, 760 F. Supp. 2d at 798 (noting that the Laffey Matrix "has not been formally adopted in the Seventh Circuit, and its rates appear significantly higher than those typically awarded in this district.").

Considering the affidavits submitted by Mr. Lopez and Mr. Loevy, along with relevant case law addressing fees in the Chicago area, the Court finds that a reasonable hourly rate for Mr. Lopez is $385. As noted, the most highly experienced and successful § 1983 trial attorneys practicing in this community have commanded a rate of only $425 per hour, and Mr. Lopez does not claim to have the same level of civil rights expertise. In addition, the *Duran* court awarded Mr. Lopez an hourly rate of $375 for work performed in 2008. Since most of Mr. Lopez's work in this case was performed in 2011, the Court believes that an upward adjustment of $10 per hour to $385 per hour is reasonable.[7]

### ii.    Mark Parts

Plaintiff next seeks an hourly rate of $450 for Mr. Parts. In arguing that this rate is excessive, Defendants first note that their lead attorney in the case, Harry N. Arger,

---

[7]    According to the Laffey Matrix that Plaintiff relies upon, billing rates largely stagnated between 2008 and 2010. See http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf) (indicating no change in the Laffey Matrix rates from 2008 to 2010).

charged only $265 per hour. (Doc. 157, at 8). Defendants "cite no authority to support the notion that [P]laintiff['s] fee award must be based on defense counsel's billing rate[, and] such an arrangement would frustrate the purpose of section 1988." *K.L. v. Edgar*, No. 92 C 5722, 2000 WL 1499445, at *9 (N.D. Ill. Oct. 6, 2000). *See also Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 660 (7th Cir. 2007) (finding "no convincing argument why the district court was obliged to use the City's pricing structure as a proxy for what the market will bear.").

Defendants also object that in his supporting affidavit, Mr. Parts improperly relies on the Laffey Matrix and the National Law Journal survey of billing rates at major Chicago law firms, including such "silk stocking firms" as Jenner & Block and Winston & Strawn. (Doc. 157, at 7). As discussed, the most experienced and successful § 1983 attorneys in this jurisdiction have commanded $425 per hour, notwithstanding what is reported in the Laffey Matrix. *Thompson*, 2011 WL 2923694, at *3-4. In addition, "[t]he rates listed [in the National Law Journal survey] are not categorized by practice group, let alone specialties such as civil rights or federal litigation." *Id.* at *4. Mr. Parts does not currently practice at a large law firm and, thus, the National Law Journal survey holds "little, if any weight with the Court." *Id.*

The affidavit from Melvin L. Brooks of Cochran, Cherry, Givens, Smith & Montgomery is similarly unpersuasive regarding an appropriate hourly rate for Mr. Parts. Mr. Brooks states that he supervised Mr. Parts when they worked for the City of Chicago's Law Department between 1997 and 2000, and later recommended that Mr. Parts join his law firm due to his impressive legal skills. (Brooks Aff., Doc. 146-7 ¶¶ 6, 7; Parts Aff., Doc. 146-6 ¶ 2(B) and Ex. A). Mr. Brooks then notes that his firm has "a significant caseload of

civil rights cases" and claims that based on his "aware[ness] of the legal market in our community," a rate of $450 per hour is "very reasonable." (Brooks Aff. ¶ 8). Though Mr. Brooks does have first-hand knowledge of Mr. Parts's skills, he fails to identify any civil rights cases that he has personally handled, or indicate what rate he received for them. Nor does he provide the specific rates awarded to other civil rights attorneys from his firm or within the relevant community. Mr. Brooks's conclusory assertion that $450 per hour is reasonable is thus not particularly instructive. *See Duran*, 2012 WL 1279903, at *17 (describing a similar affidavit from Mr. Brooks as being "of no help.").

Mr. Parts states that he has more than 20 years of experience as a litigation attorney and has tried "dozens of cases," but he has participated in only three § 1983 trials. (Parts Aff., Doc. 146-6 ¶¶ 2(B), 3-5). This is far below the number of civil rights cases tried by Mr. Loevy. In addition, while Mr. Parts has practiced in the area of civil rights for 10 years, (*id.* ¶¶ 1-2), he has not had the degree of success, and does not have the same reputation or level of recognition within the legal community, as Mr. Loevy, who has practiced in this area for approximately 15 years. *See, e.g., Blackwell*, 2012 WL 469962, at *3 (describing Mr. Loevy's education, noting that he has been recognized by a number of legal publications, and discussing his significant trial successes including 12 separate jury verdicts of $1 million or more); *Duran*, 2012 WL 1279903, at *20 n.14 (noting that Mr. Loevy's "success continues to the present day; he recently obtained a $25 million jury verdict in a § 1983 wrongful-conviction case.").

That said, the *Duran* court recently awarded Mr. Parts the same $375 hourly fee it awarded Mr. Lopez. 2012 WL 1279903, at *21. The Court thus finds that the time-adjusted

rate of $385 per hour is reasonable for an experienced attorney like Mr. Parts, when performing work suitable for a senior trial lawyer.

### iii.    Faith Spencer

For Ms. Spencer, Plaintiff seeks an hourly rate of $325.  Ms. Spencer has engaged in the full-time practice of law for more than 10 years, but only five of those years involved civil rights litigation.  (Spencer Aff., Doc. 146-8 ¶ 2).  Defendants argue that based on this level of experience, Ms. Spencer should be billed as an associate.  They suggest a rate of $185 per hour, which is what they paid their associate who was admitted to the bar in 2007. (Doc. 157, at 8).  For the reasons set forth with respect to Mr. Parts, this is not an apt comparison.  At the same time, the Court is not persuaded by Plaintiff's position that Ms. Spencer is entitled to $325 per hour as reflected in the National Law Journal survey.  (Doc. 158, at 9).  As noted, that survey holds little weight with the Court, particularly given the fact that Ms. Spencer does not practice at a large law firm.

Plaintiff has submitted an affidavit from Jonathan Piper of LakinChapman LLC stating that he worked with and supervised Ms. Spencer when they were practicing at Sonnenschein, Nath & Rosenthal between 1991 and 1995.  (Piper Aff., Doc. 146-9 ¶ 3; Spencer Aff., Doc. 146-8 ¶ 2(B) and Ex. A).  Mr. Piper avers that Ms. Spencer "does excellent work and is a diligent and thoughtful attorney," (Piper Aff., Doc. 146-9 ¶ 3), but he has not worked with her in more than 15 years.  In addition, he handles class action litigation and commercial disputes, not civil rights cases such as this one.  (*Id.* ¶¶ 2, 3).  As a result, the Court is not persuaded by Mr. Piper's opinion that $325 per hour is a reasonable rate for Ms. Spencer.  (*Id.* ¶ 4).

Ms. Spencer has participated in only one other § 1983 trial besides this case and the evidence presented is silent as to her role in that trial. Moreover, Plaintiff has not submitted any invoices reflecting that Ms. Spencer has ever been awarded a rate of $325 per hour. Despite the fact that Ms. Spencer graduated from law school in 1990 and has a number of years of experience, she clearly functioned as an associate in this case, largely handling legal research and writing responsibilities. Notably, she did not question any witnesses or make any arguments during the trial. In determining an appropriate associate rate, the Court considers the rate awarded to Mr. Parts, who works with Ms. Spencer at the same firm. The Court reduced Mr. Parts's requested rate by 14% (from $450 to $385), and finds that roughly the same reduction is appropriate for Ms. Spencer. Thus, Ms. Spencer will be awarded $280 per hour for her work on the response to summary judgment and the fee petition and bill of costs. As noted previously, however, the 50 hours of work that is being allowed during the trial and pre-trial phase (assisting Mr. Parts and Mr. Lopez) will be compensated at the rate of $100 per hour.

### c. Total Lodestar Amount

Based on the foregoing analysis, the lodestar amount in this case is $323,041.50. The lodestar consists of the following hours and rates for Plaintiff's attorneys:

| | | | |
|---|---|---|---|
| Mr. Parts | 637.5 hours | $385 per hour | $245,437.50 |
| Ms. Spencer | 74.5 hours | $280 per hour | $ 20,860 |
| | 50 hours | $100 per hour | $  5,000 |
| | | | $ 25,860 |
| Mr. Lopez | 134.4 hours | $385 per hour | $ 51,744 |
| Total: | | | $323,041.50 |

### 2.    Adjustment to the Lodestar Amount

The Court's inquiry is not yet over because the lodestar amount may be adjusted up or down based on the 12 *Hensley* factors.  461 U.S. at 436.[8]  The Supreme Court has stated that "the most critical factor" is "the degree of success obtained" by the prevailing party.  *Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) (quoting *Hensley*, 461 U.S. at 436).  Defendants first argue that the lodestar amount should be reduced to a level proportional to Plaintiff's success at trial.  (Doc. 157, at 9).  The Seventh Circuit, however, has "repeatedly rejected the notion that the fees must be calculated proportionally to damages."  *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999)).  *See also Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 544-45 (7th Cir. 2009) (concept of proportionally reducing attorneys' fees where the plaintiff recovers a very small percentage of the damages claimed "seems to be losing favor.").

Nevertheless, the difference between the amount of fees requested and the actual damages awarded "raises a 'red flag' and warrants 'increased reflection' in determining whether the lodestar should be reduced."  *Thompson*, 2011 WL 2837589, at *8 (quoting *Anderson*, 578 F.3d at 546).  *See also Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000) (a court's "fee order should evidence increased reflection before awarding attorney's fees

---

[8]    The twelve factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  461 U.S. at 430 n.3.

that are large multiples of the damages recovered."). The Seventh Circuit has explained that the fee-shifting statute reflects Congress's determination that if a party prevails and receives more than nominal damages, then her claim was worth bringing. Thus, the Court need only assess "whether the hours spent were a reasonable means to that necessary end." *Anderson*, 578 F.3d at 546.

Defendants contend that the answer to that question is "no," and insist that the lodestar amount must be reduced by a blanket percentage. They suggest a 92% reduction (based on Plaintiff's success on one out of 12 claims, or 1/12 of the case); a 66% reduction (based on Plaintiff's § 1983 recovery against one of three defendants); or a 50% reduction (based on Plaintiff's recovery against only one of the two defendant officers). (Doc. 157, at 11, 12). Plaintiff acknowledges that she did not achieve the level of success she had hoped for, and thus agrees to a reduction, but of only 1/3, or 33 1/3%. (Doc. 158, at 2, 14).

The Court agrees that the lodestar amount does not reflect the number of hours reasonably necessary to achieve Plaintiff's success in this case. She alleged nine claims against three defendants, took seven claims to trial, lost on one, and voluntarily dismissed all of the others except the excessive force and conversion claims. One of the dismissed claims – false arrest for possession of PCP – represented almost half of her total requested damages ($120,000 of the $260,000 that was sought) and was a major focus at trial. While Plaintiff prevailed on the excessive force claim, the jury awarded her $11,937 in compensatory damages against only one of the two defendant officers, and declined to award any punitive damages. This is a modest recovery of less than 5% of what she sought from the jury. Even Plaintiff's reduced fee request of $314,259.68 is more than 26 times the amount of damages awarded.

24

The jury's modest verdict is not the only reason that the fee request is so out of proportion to the amount of damages. Another contributing factor is the staffing decisions made in this case. Despite the many years of experience of Mr. Parts and Mr. Lopez, the decision was made that both of these senior lawyers would work on the case, largely without the assistance of a junior attorney or paralegal. During the pretrial phase and before trial preparation began, Mr. Lopez functioned at a high level, spending most of his time communicating with Mr. Parts by telephone and in writing, and occasionally reviewing motions and pleadings.

Mr. Parts, on the other hand, handled virtually all of the day-to-day work on the case single-handedly, even when that work was well suited to a junior attorney or paralegal.[9]

---

[9]     For example, Mr. Parts's billing records reflect the following entries (among others):

> Draft medical record and bill request (8/25/08)
> Prepare appearance sheet and cover sheet (7/19/09)
> Prepare City summons and correspondence with clerk's office re: same (7/23/09)
> Prepare officer summonses and correspondence with clerk's office re same (7/23/09)
> Review correspondence from clerk re issuance of summons (7/27/09)
> Draft deposition notice (6/16/10; 7/2/10)
> Correspondence to/from McCorkle re: Plaintiff's deposition (5/10/11)
> Prepare subpoenas for officers (5/16/11)
> Correspondence to audio technicians re: Garza and Campbell depositions (5/27/11)
> Review and abstract depositions (5/12/11, 5/13/11, 5/19/11, 5/24/11, 5/28/11, 5/29/11)
> Review medical bills and records (10/15/09)
> Review records for production (11/25/09)
> Review documents for discovery responses (1/8/10, 6/25/10, 7/8/10)
> Review discovery responses (6/23/10)
> Review document productions, discovery responses and pleadings (5/17/11)
> Review transcripts and audio for motion for summary judgment record (2/23/11)
> Review Textnet transcripts and video files (4/27/11)

As a further example, Mr. Parts conducted approximately 67 hours of legal research between September 17, 2008 and December 9, 2011. This figure excludes billing entries that included but

Mr. Parts did not utilize a paralegal at any time during this case, and did not seek the assistance of a less experienced attorney until February 2011 when Ms. Spencer began helping with the response to Defendants' motion for summary judgment. Even after this, Mr. Parts continued to perform much of the work himself regardless of its nature. As a result, he managed to work 549.7 hours on the case even before the trial had started. During the trial preparation phase alone (roughly May 7 until June 12, 2011), Mr. Parts worked 222.4 hours. On the defense team, the senior attorney delegated the bulk of the pretrial work to an associate who has been practicing law since 2007, and also utilized a paralegal for abstracting depositions and certain other work. (Doc. 158-7). During the trial preparation phase, Defendants' senior lawyer worked 34.2 hours, and others on the team, including a paralegal, worked a total of 120.8 hours.

Given Mr. Parts's billing rate, his decision to perform most of the pretrial work himself resulted in an unnecessarily high lodestar. Further, this Court agrees with Defendants that it was "excessive to have two partner level attorneys seeking fees for plaintiff in this case[.]" (Doc. 157, at 8). The case involved a single plaintiff suing two police officers and the City of Chicago for damages flowing from a traffic stop and arrest. Only 10 witnesses were called to testify in Plaintiff's case, and a single witness in the defense case (a forensic scientist who tested narcotics and was not cross-examined by Plaintiff). The testimony and arguments were concluded in five days. Mr. Parts easily could have handled this trial with only a junior attorney to assist him. Indeed, Mr. Parts conducted the

---

were not limited to legal research since it was impossible to determine the portion of the total time devoted to the research.

direct examination of 8 of the 10 witnesses and made both the opening and closing statement. In contrast, Mr. Lopez examined only 2 witnesses and made the rebuttal argument.[10]

Mr. Parts was not required to delegate any work to a junior attorney or paralegal during the pretrial phase. Nor is there a prohibition against two experienced lawyers choosing to work together on a case such as this. But these staffing decisions resulted in an unreasonably high lodestar for this particular case given its economic value, the small number of parties and witnesses, and the fact that the case did not present substantial legal or factual complexity, or any novel questions. As one court recently noted, "an attorney who undertakes a Section 1983 case may [not] spend time on the case, and ask the losing party to pay for it, without giving any consideration to its economic value." *Ragland*, Slip op., at 36-37. Certainly a paying client in a case such as this would balk at paying for two senior lawyers to try the case, and paying Mr. Parts to perform virtually all the pretrial work even when it was well suited to a junior attorney or paralegal.

In terms of the other factors under *Hensley*, the parties do not point to any that specifically warrant an upward or downward adjustment. Plaintiff "certainly vindicated h[er] Constitutional rights and, at a minimum, served a public interest," *Thompson*, 2011 WL 2837589, at *8, but her requested fees are not reasonable in relation to the level of success. For these reasons, the Court reduces the lodestar amount by 45% rather than

---

[10] By way of comparison, the junior attorney on Defendants' team made the opening statement, cross-examined one of the medical experts, and conducted the direct examination of the only witness called in the defense case. The rest of the trial work was performed by the senior attorney.

the 33 1/3% suggested by Plaintiff.  This means that a total of $177,672.83 in fees will be awarded.

### 3.  Expenses

In addition to her attorneys' fees, Plaintiff also requests that the Court award her $1,450 in expenses pursuant to § 1988.  Specifically, she seeks $1,300 for video technical support and $150 for audio technical support.  (Doc. 146, at 13).  According to Seventh Circuit caselaw,

> expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates–expenses for such things as postage, long distance phone calls, xeroxing, travel, paralegals and expert witnesses–are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act.

*Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (internal quotations omitted).  Defendants claim that Plaintiff's request for technical support is "unreasonable and unnecessary," but do not cite to any supporting case law.  (Doc. 157, at 13).

Plaintiff played multiple audio and video deposition excerpts for the jury throughout the course of the trial, and the Court is satisfied that she needed the requested technical support.  Notably, Defendants themselves spent $1,117.10 for a blow-up aerial photo used as a trial exhibit.  (Doc. 158, at 14).  Defendants' objection to Plaintiff's $1,450 in expenses is overruled.

### 4.  Summary

Plaintiff is awarded $177,672.83 in attorneys' fees and $1,450 in expenses, for a total of $179,122.83.

**D.    Costs**

The Court finally turns to Defendants' objections to Plaintiff's bill of costs. Rule 54(d) creates a "strong presumption that costs will be awarded to the prevailing party," and that presumption is "difficult to overcome." *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997); *Gilbert-Mitchell v. Lappin*, No. 06-CV-0741-MJR, 2010 WL 1838283, at *2 (S.D. Ill. May 6, 2010). Under 28 U.S.C. § 1920, recoverable costs include (1) fees of the clerk and marshal, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters. *Republic Tobacco Co. v. North Atlantic Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007). As the losing parties, Defendants "bear[] the burden of an affirmative showing that taxed costs are not appropriate." *Davis v. Budz*, No. 99 C 3009, 2011 WL 1303435, at *1 (N.D. Ill. Mar. 31, 2011) (quoting *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005)).

Plaintiff seeks a total of $8,968.66 in costs, including: (1) $350 for fees of the Clerk; (2) $45 for service of summons and subpoena; (3) $6,702.90 for court reporter and transcript fees; (4) $1,425 for witness fees; and (5) $445.76 for copying expenses. (Doc. 141). Defendants dispute only the request for deposition costs, arguing that Plaintiff is attempting to recover more than the maximum rate allowable for the transcripts of Defendant Campbell's July 15, 2010 deposition (the "Campbell deposition"), Defendant Garza's July 16, 2010 deposition (the "Garza deposition"), and Sergeant David Sepulveda's August 9, 2010 deposition (the "Sepulveda deposition"). (Doc. 143, at 5).

29

"Section 1920(2) allows recovery of fees for transcripts necessarily obtained for use in the case." *Berry v. Chicago Transit Auth.*, No. 06 C 3640, 2011 WL 947073, at *2 (N.D. Ill. Mar. 15, 2011). Local Rule 54.1 further elaborates that the costs of such transcripts "shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court." L.R. 54.1(b). For ordinary transcripts, the rate is $3.65 per page for an original transcript and $0.90 for the first copy to each party. *See* Maximum Transcript Rates, http://www.ilnd.uscourts.gov/clerks_office/CrtReporter/trnscrpt.htm (last viewed on June 20, 2012).

Plaintiff seeks to recover: (1) $831.60 for the Campbell deposition; (2) $757.35 for the Garza deposition; and (3) $396 for the Sepulveda deposition. The invoices for all three of these depositions indicate that Plaintiff paid $4.95 per page for the transcripts. (Doc. 141, at 12, 17, 21). Plaintiff denies that she needed or ordered the transcripts on an expedited basis, and she offers no compelling reason for the inflated price. Thus, Plaintiff may recover: (1) $613.20 for the Campbell deposition ($3.65 x 168 pages); (2) $558.45 for the Garza deposition ($3.65 x 153 pages); and (3) $292 for the Sepulveda deposition ($3.65 x 80 pages). Plaintiff's request for costs will therefore be reduced by a total of $521.30: $218.40 for Defendant Campbell ($831.60 - $613.20), $198.90 for Defendant Garza ($757.35 - $558.45), and $104 for Sergeant Sepulveda ($396 - $292).

All of Plaintiff's other requested costs are approved without objection.

**CONCLUSION**

For the reasons stated above, Plaintiff's Petition for Attorney Fees and Expenses [146] is granted.  Plaintiff is awarded $179,122.83 in fees and expenses, plus $8,447.36 in costs.

ENTER:

Dated:  June 20, 2012

_____
SHEILA FINNEGAN
United States Magistrate Judge